*Attorney Grievance Commission of Maryland v. Terence Taniform*, Misc. Docket AG No. 40, September Term, 2021. Opinion by Gould, J.

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION**

The Supreme Court of Maryland sanctioned an attorney with an indefinite suspension with the right to reapply for reinstatement after 18 months for providing incompetent representation, failing to file necessary papers, which nearly caused a client to get deported, failing to communicate adequately with his clients, failing to promptly refund money, and making intentional misrepresentations to clients, clients' families, counsel, and Bar Counsel.  Such conduct violated Maryland Attorneys' Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.15 (Safekeeping of Property), 1.16(d) (Declining or Terminating Representation), 4.1 (Truthfulness in Statements to Others), 8.1(a) and (b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct), and Maryland Rule 19-407 (Attorney Trust Account Record-Keeping).

IN THE SUPREME COURT

OF MARYLAND*

Misc. Docket AG No. 40

September Term, 2021

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

TERENCE TANIFORM

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Gould, J.
Booth, J., concurs.

_____

Filed: December 16, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

On November 17, 2021, pursuant to Maryland Rule 19-721, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "Petition") against Terence Taniform. The Petition alleged that Mr. Taniform violated multiple provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and also violated the Professional Conduct for Practitioners governing federal immigration proceedings set forth in 8 C.F.R. § 1003.102. In accordance with Maryland Rules 19-722(a) and 19-727, we assigned the Petition to the Honorable Theresa M. Chernosky of the Circuit Court for Montgomery County (the "hearing judge") to hold an evidentiary hearing and issue findings of fact and conclusions of law.

The hearing was held on May 16 and 17, 2022. At the beginning of the hearing, the parties presented the court with a joint exhibit of stipulated facts. Bar Counsel then presented its case with one witness and 31 exhibits. Mr. Taniform testified on his own behalf, called one character witness, and submitted no exhibits.

On July 1, 2022, the hearing judge issued a written statement containing findings of fact and conclusions of law (the "findings"), concluding by clear and convincing evidence that Mr. Taniform violated MARPC 1.1 (Competence),[1] 1.3 (Diligence), 1.4(a) and (b)

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the MARPC and recodified without substantive modification in Title 19, Chapter 300 of the Maryland Rules. Given that there are no material differences between the two versions and Mr. Taniform committed violations of said rules after their renaming, we will refer to all violations herein under their shorter designations as permitted by Rule 19-300.1(22)—*e.g.*, "Rule 1.1" as opposed to "Rule 19-301.1."

(Communication), 1.15 (Safekeeping of Property), 1.16(d) (Declining or Terminating Representation), 4.1 (Truthfulness in Statements to Others), 8.1(a) and (b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct), and Maryland Rule 19-407 (Attorney Trust Account Record-Keeping).[2]

Mr. Taniform filed exceptions to the findings pursuant to Maryland Rule 19-728(b).

Oral arguments were held before this Court on October 3, 2022. As explained below, we overrule Mr. Taniform's exceptions, sustain the hearing judge's findings, and determine that an indefinite suspension with the right to apply for reinstatement after 18 months is the appropriate sanction under the facts and circumstances of this case.

## BACKGROUND

### *Factual Findings*

Mr. Taniform was born in Cameroon. There, in 2003, he graduated from the University of Yaoundé II, with a bachelor's degree in law. He subsequently emigrated to the United States in 2007, at the age of 24. He arrived in Sacramento, California, and planned to go to the University of the Pacific to obtain an LLM. At that point, he intended to eventually return to Cameroon. He enrolled at the University of the Pacific but withdrew after he lost his financial support when his grandfather died. When he told his family that

---

[2] As noted, Mr. Taniform was charged with violations of both the MARPC and the Professional Conduct for Practitioners governing federal immigration proceedings set forth in 8 C.F.R. § 1003.102. The hearing judge determined that the charges under the Federal Immigration Rules of Professional Conduct and MARPC implicated substantively identical provisions, and that the factual findings made as to the latter would apply to the charges under the former. As neither party excepted to that determination, we shall not address the choice of law issues implicated in this matter.

he wanted to return to Cameroon for his grandfather's funeral, he learned there was an outstanding warrant for his arrest in that country due to his political activity there while in college. Mr. Taniform then moved to Maryland to be with an uncle and petitioned for asylum. In 2009, he was granted political asylum and became a U.S. citizen.

In 2014, he was married with two children. He began law school at the University of Dayton in Ohio, but his family remained in Maryland. While in law school, he was diagnosed with anxiety and depression, for which he was treated.

During law school, Mr. Taniform interned for a Maryland immigration attorney, Kevin Tabe. His tasks included conducting initial client interviews and filling out asylum forms, green card applications, and other immigration forms.

Mr. Taniform graduated law school in 2017 and was admitted to the Maryland Bar in December 2017. During 2018, he stayed busy working on document review projects in the District of Columbia. He also worked for Mr. Tabe on a case-by-case basis, for which he had a limited role. According to Mr. Taniform, "we would discuss the case together, and I would tell him what, I would go through the case telling what difficulties I think might come up with the case, and then he would discuss with me on how to handle those." Mr. Taniform's assignments included visiting Mr. Tabe's clients in detention centers around the country, interpreting for them at their preliminary hearings (master calendar hearings), and helping them complete the asylum forms. Eventually, Mr. Taniform began representing the clients at their final hearings.

In 2019, Mr. Taniform began representing his own clients. He maintained an office in Montgomery County, focusing his practice on immigration law. He was assisted by

Kuji Mundi, a paralegal in California working in immigration law.  Mr. Mundi conducted initial client interviews and filled out asylum forms.

A.  Representation of Fon Halley Fon

On March 1, 2019, Fon Halley Fon, a citizen of Cameroon, entered the United States at the port of entry at San Ysidro, California.  On April 23, the Department of Homeland Security and Immigration and Customs Enforcement ("ICE") formally charged him with removal under the Immigration and Nationality Act and served him with notice to appear in court.  He was arrested by immigration authorities, detained in Mississippi for two months, and then transported to Louisiana.  While in Louisiana, he hired Mr. Tabe to file an asylum petition on his behalf.  Mr. Tabe filed the petition, but on August 13, the immigration judge found Mr. Fon removable as charged, denied his petition, and ordered him to be deported to Cameroon.

On Mr. Fon's behalf, Mr. Tabe appealed the case to the Board of Immigration Appeals (the "BIA").  On January 13, 2020, the BIA denied the appeal and gave Mr. Fon 30 days to petition for a review of the denial.

While Mr. Fon remained in detention in Louisiana, he authorized his aunt, Dorothy Fongum, to find counsel on his behalf.  By happenstance, upon the recommendation of someone (not Mr. Tabe), Ms. Fongum retained Mr. Taniform on Mr. Fon's behalf to file a motion to reopen the BIA appeal and, according to Mr. Fon, to also file the necessary paperwork to secure his release on parole or bond.  The deadline for filing the motion to reopen was February 12.

4

On January 28, 2020, Mrs. Fongum signed a retainer agreement on behalf of Mr. Fon, agreeing to pay Mr. Taniform $5,000, with an initial deposit of $1,500. Ms. Fongum advanced the $1,500 by check.

Mr. Taniform testified that Ms. Fongum provided him with documents to file the motion to reopen. He also testified that he reached out to Mr. Mundi for assistance.

After he retained Mr. Taniform, Mr. Fon spoke with him by phone. Mr. Taniform told Mr. Fon that he would seek to reopen the case to introduce new evidence based on a change in conditions in Cameroon. Mr. Taniform also agreed to seek Mr. Fon's parole or release from detention.

Approximately two weeks after he retained Mr. Taniform, Mr. Fon called Mr. Taniform to tell him that ICE wanted Mr. Fon to sign a deportation form because he had lost his appeal. Mr. Taniform advised Mr. Fon to tell ICE that he had a lawyer taking care of his case. He also told Mr. Fon not to worry because he would file the motion to reopen by February 10.

On February 3, 2020, Ms. Fongum attempted to reach Mr. Taniform by phone. Mr. Taniform sent her a text message saying that he would call her back. When he did not, on February 5, Ms. Fongum left another message for Mr. Taniform, asking why he was not returning her calls.

In February, Mr. Fon met with and told an ICE officer that he had retained counsel to reopen his case. The officer agreed to give Mr. Fon additional time before scheduling his deportation.

5

Between February and May 2020, Mr. Taniform had multiple phone conversations with Mr. Fon and Ms. Fongum regarding the status of Mr. Fon's case. Each call was initiated by either Mr. Fon or Ms. Fongum. Mr. Fon called Mr. Taniform weekly to find out what was happening with his case; each time, Mr. Taniform told him that he was working on his case and that Mr. Fon need not worry. On February 10, Mr. Taniform told Mr. Fon that the motion to reopen had been filed and that he was waiting for a response from the BIA. Mr. Taniform testified that Mr. Taniform said that he believed what he had said because, he claimed, that's what Mr. Mundi had told him. Mr. Taniform did not in fact file the motion to reopen before the February 12 deadline or anytime thereafter.

On February 26, 2020, fourteen days after the motion to reopen was due, Mr. Taniform deposited Ms. Fongum's $1,500 check into his attorney trust account.

After February 10, Mr. Fon continued to contact Mr. Taniform weekly to inquire whether there had been any update from the BIA; each time, Mr. Taniform led Mr. Fon to believe that the motion had been filed and that he had not received an update from the BIA. On March 24, Ms. Fongum sent Mr. Taniform a text message asking whether he had contacted the court to verify its receipt of Mr. Fon's appeal documents.

Mr. Taniform testified that he had directed Mr. Mundi to file a "skeletal" motion by the February 12 deadline advising the BIA that Mr. Fon was seeking to reopen the case, and that he intended to subsequently file a supplemental motion stating the basis for the request. Mr. Taniform claimed that each time he told Mr. Fon or Ms. Fongum that the motion was pending, he was referring to the "skeletal" motion. He acknowledged that he never informed Mr. Fon or Ms. Fongum of his plan to first file a "skeletal" motion and

6

then to file a supplemental one. He admitted that he never drafted or filed a supplemental motion and never directed Mr. Mundi to do so. In contrast to his testimony at the hearing, when he responded to Bar Counsel's investigation, Mr. Taniform never made any claim about "skeletal" or supplemental motions.

In early April, ICE officers again met with Mr. Fon to schedule his deportation. He told them that he was represented by a lawyer and was contesting his deportation. Mr. Fon believed that he would be putting his life in jeopardy if he signed his deportation papers.

After that meeting, Mr. Fon called Mr. Taniform who said that the motion was pending, that he did not know why he was unable to get any updates, that Mr. Fon should not sign any deportation papers, and that he would call the BIA to check on the status of the case. When Mr. Fon next called Mr. Taniform, Mr. Taniform stated that he learned that, because of the coronavirus pandemic, everything had been delayed. Mr. Taniform told Mr. Fon to be patient. In fact, Mr. Taniform never contacted the BIA regarding the status of Mr. Fon's case. At his hearing, Mr. Taniform testified that Mr. Mundi told him that things may have been delayed because of the pandemic.

Throughout April, Ms. Fongum made multiple requests for information regarding the status of Mr. Fon's case, and each time, Mr. Taniform failed to respond.

In mid-May, an ICE officer met again with Mr. Fon. The officer told him that he needed to sign the deportation paperwork because his file indicated that no motion had been filed with the BIA and that no attorney had entered an appearance on his behalf. As a result, Mr. Fon had no choice but to sign the deportation paperwork, which he said felt was like he was signing his "death paper." Mr. Fon had Ms. Fongum call ICE, which

confirmed that nothing in their system indicated that Mr. Fon was contesting his deportation.

Mr. Fon called and told Mr. Taniform what the ICE had said. Mr. Taniform said their information was not correct and that he would find out from BIA what was going on. He told Mr. Fon not to worry. He also stated that he would file a motion to stay the deportation. After that, Mr. Fon tried numerous times to call Mr. Taniform, but Mr. Taniform would not take his calls. At that time, Mr. Fon was scheduled to be deported in early November.

In May, Mr. Taniform told Ms. Fongum that he would file a motion to reopen Mr. Fon's appeal and stay his deportation. Mr. Taniform testified that when he said this, he was referring to the supplemental motion he intended to file.

Mr. Fon then retained a new lawyer, Ruth Hargrove. On July 2, when contacted by Ms. Hargrove, Mr. Taniform stated that he had filed a motion to reopen the appeal and promised to send her a copy. Ms. Hargrove followed up her phone conversation with an email and a text message requesting copies of the motion and the motion to stay Mr. Fon's deportation. Of course, Mr. Taniform had nothing to send to Ms. Hargrove, so he didn't.

When Mr. Taniform did not respond to Ms. Hargrove, she contacted the BIA which informed her that Mr. Taniform had filed neither a motion to reopen Mr. Fon's case nor a motion to stay his deportation. On July 6, Ms. Hargrove emailed and texted Mr. Taniform, repeating what the BIA had told her and requesting a response from him within 24 hours. Mr. Taniform responded that he had "been in and out of the ER for the last two days" and would reply to her later that day. Mr. Taniform never contacted Ms. Hargrove again.

8

On July 9, Ms. Hargrove sent Mr. Taniform an email summarizing his misrepresentations to Mr. Fon and Ms. Fongum and demanding a refund of the $1,500 retainer Ms. Fongum had paid. Mr. Taniform never responded.

On October 2, 2020, Ms. Hargrove filed a motion to reopen Mr. Fon's case. Meanwhile, ICE proceeded with Mr. Fon's deportation; they put him on a plane from Louisiana to Texas, and began arranging his deportation to Cameroon. They gave him a plane ticket and scheduled to deport him on November 10. At that time, Mr. Fon was "living in fear and pain, knowing that anything could happen" if he was returned to Cameroon.

On November 5, Ms. Hargrove filed an emergency motion to stay Mr. Fon's deportation. The BIA granted the motion on November 9. On November 24, ICE released Mr. Fon from detention subject to GPS monitoring. Subsequently, Ms. Hargrove filed a motion to reopen the case, which the BIA granted, based on both Mr. Taniform's and Mr. Tabe's ineffective assistance of counsel. Mr. Fon had a master calendar hearing scheduled for October 2022. The outcome of that hearing is not part of the record in this matter.

At his hearing, Mr. Taniform testified that Mr. Mundi would typically provide him with draft motions to approve and sign, but he could not explain why this did not happen in Mr. Fon's case. Mr. Taniform maintained that he had asked Mr. Mundi for a copy of the filed motion on numerous occasions, and even though there had been problems with Mr. Mundi's work in the past, Mr. Taniform did nothing further to ensure that the motion had been filed in Mr. Fon's case. Mr. Taniform neither called Mr. Mundi as a witness nor

9

offered corroborating evidence that he had tasked Mr. Mundi with preparing Mr. Fon's motion.

### B.     *Representation of Clovis Tangmoh Fozao*

Clovis Tangmoh Fozao ("Clovis"), a citizen of Cameroon, entered the United States in or about 2019.  On February 11, 2020, an immigration court denied his asylum petition, and he was detained by immigration authorities in Louisiana.  On February 28, Clovis's brother, Felix Fozao ("Felix"),[3] acting on Clovis's behalf, retained Mr. Taniform to represent Clovis to appeal the immigration court's decision and to file an application for parole.[4]  Mr. Taniform agreed to represent Clovis for a fee of $3,250, with an initial deposit of $2,000.

Felix paid $1,000 on February 28 and another $1,000 on March 2, which Mr. Taniform deposited into his operating account without his client's consent.  On March 5, he transferred $1,050 of those funds into his attorney trust account.

On March 6, Mr. Taniform entered his appearance in Clovis's case and noted an appeal.  The Notice of Appeal form warned that "[the BIA] may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule."  The deadline for filing the brief or statement was May 27.

---

[3] We intend no disrespect by using the first names of Clovis Fozao and his brother Felix Fozao.  We do this only for purposes of clarity.

[4] Mr. Taniform testified that he agreed to file the application for parole on a pro bono basis.

Sometime between February 28 and April 8, Felix sent a text message to Mr. Taniform stating: "It's been [a while]. I just wanted to find out about the appeal case of Fozao Clovis Tangmoh[.] Also, to find out how we can apply for parole and or bond for him[.]" Mr. Taniform replied: "[a]ppeal notice has been received. We are waiting [for] a briefing order[.] Call me on Thursday 10 am and let's talk about the parole and or bond[.]"

On April 28, Felix sent a text message to Mr. Taniform emphasizing the urgent need to file the request for parole. Mr. Taniform responded by text message that day, stating that he was working on the motion and attaching a picture of it. Felix sent Mr. Taniform text messages on April 29 and May 20 in which he identified errors in the motion, including Clovis's name, but Mr. Taniform never responded.

On May 22, Felix sent a text message to Mr. Taniform stating: "I just had a call from my brother Fozao Clovis Tangmoh informing me that some documents have been sent to you from the court that require your action on or before May 27th 2020[.] I was calling so that we could talk about them." Mr. Taniform never responded. On June 15, Felix sent multiple text messages to Mr. Taniform requesting information about the status of Clovis's case. In response, Mr. Taniform falsely told Felix that he was in the process of filing Clovis's appeal. Mr. Taniform failed to file a brief by the May 27 deadline or at any time thereafter.

Mr. Taniform testified that he never filed the appeal brief because he procrastinated and believed a brief could be filed late and still be accepted by the court. He contended that he told Felix and Clovis that everything was fine because he believed that he could fix the problem.

11

On July 2, the BIA dismissed Clovis's appeal because "statements were not provided on the Notice of Appeal that meaningfully apprise[d] the Board of the specific reasons underlying the challenge to the Immigration Judge's Decision." That same day, the BIA sent Clovis a notice of its decision and informed him that any petition for review of the decision must be filed within 30 days.

Nonetheless, on July 7, Mr. Taniform knowingly and intentionally misrepresented to Felix that Clovis's appeal and his application for parole were going well. When Felix told Mr. Taniform that Clovis's appeal had been dismissed, Mr. Taniform replied that this was not true. On July 13, Felix terminated Mr. Taniform's representation of Clovis and requested a refund of the $2,000. Mr. Taniform did not respond to that request.

## C. Bar Counsel's Investigation

### 1. The Fon Matter

On July 15, 2020, Ms. Fongum filed a complaint with Bar Counsel. On July 22, Bar Counsel wrote to Mr. Taniform, enclosed the complaint, and requested a written response. In response, Mr. Taniform refunded the $1,500 to Ms. Fongum on September 15. On September 18, he responded to Bar Counsel with the following statement:

> When I assured Mrs. Fongum and Ms. Hargrove that everything was ok, I was under the impression that the motion had been filed because the file had been moved to another section of the cabinet that had all completed files that had already been treated.

At his hearing, Mr. Taniform acknowledged that he never looked at Mr. Fon's client file because he knew that it did not contain a copy of the motion to reopen.

12

On September 23, Mr. Fon also filed a complaint with Bar Counsel against Mr. Taniform.

## 2. *The Fozao Matter*

On July 24, 2020, Felix filed a complaint with Bar Counsel. On July 30, Bar Counsel wrote to Mr. Taniform, enclosed Felix's complaint, and requested a written response. In response, Mr. Taniform refunded the $2,000 to Felix on September 15. On September 18, he responded to Bar Counsel with the following statement, similar to his response to Bar Counsel in its investigation of Ms. Fongum's complaint:

> When I assured Mr. Felix that everything was ok, I was under the impression that the brief had been filed because some files including Mr. Clovis Fozao's file had been mistakenly moved to another section of the cabinet that had all completed files.

On November 6, Bar Counsel wrote to Mr. Taniform and requested, in part, Mr. Taniform's complete client file and his attorney trust account records relating to his representation of Clovis. Mr. Taniform failed to provide this information. When questioned about the transfer of the retainer from Mr. Taniform's operating account to his trust account, Mr. Taniform stated to Bar Counsel that:

> Since my bank does not accept bank transfers and deposits into a trust account, I had to withdraw the money and deposit it into the trust account.

> The reason why I only deposited $1,50.00 [sic] is because I began the appeal process by filing a notice of intent to appeal coupled with a request for fee waiver for [Clovis]. Lastly, as noted on my last response to the board, I had agreed to file an application for parole with immigration and customs Enforcement [sic] pro bono.

13

**STANDARD OF REVIEW**

This Court has original jurisdiction over attorney discipline proceedings and conducts an independent review of the hearing judge's findings of fact and conclusions of law. *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 178 (2015). We review the hearing judge's conclusions of law without deference. Md. Rule 19-740(b)(1). We may treat any facts not challenged by exceptions as established. Md. Rule 19-740(b)(2)(A). "If exceptions are filed," we determine "whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)." Md. Rule 19-740(b)(2)(B). Under Rule 19-727(c), Bar Counsel must prove its allegations of misconduct by clear and convincing evidence. In contrast, the respondent must prove any affirmative defenses and any mitigating or extenuating circumstances by a preponderance of the evidence. *Id.*

**DISCUSSION**

Either party may file exceptions to the hearing judge's findings of fact or conclusions of law. Md. Rule 19-728(b). Here, Bar Counsel did not file any exceptions. Mr. Taniform, on the other hand, excepts to multiple findings of fact and conclusions of law, each of which we address below.

A.    *Exceptions to the Hearing Judge's Findings of Fact*

    1.    *The Fon Matter*

Mr. Taniform excepts to the court's findings that he (1) made "knowing and intentional misrepresentations" to Mr. Fon and Ms. Fongum that he had filed the motion to reopen the case; and (2) misrepresented to Ms. Hargrove that he would send her a copy of the motion to reopen the case. He also excepts to the hearing judge's finding that he

14

was not credible. While Mr. Taniform concedes that his statements to Mr. Fon, Ms. Fongum, and Ms. Hargrove were inaccurate and misleading, he contends the hearing judge's findings are not justified because his statements were not made for personal gain.

At his hearing, Mr. Taniform blamed Mr. Mundi for failing to both file the motion and send a copy to Ms. Hargrove. According to Mr. Taniform, his only errors were that he failed to follow up with Mr. Mundi, failed to obtain a copy of the motion from Mr. Mundi, and failed to verify that the motion was filed. He contends that these failures evidence incompetence and a lack of diligence, not dishonesty or fraud.

A hearing judge's findings of fact are generally accepted unless they are clearly erroneous. *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 253 (2008). We defer to the credibility findings of the hearing judge because "[t]he hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe and, as we have said, to pick and choose which evidence to rely upon." *Attorney Grievance Comm'n v. Barton*, 442 Md. 91, 122 (2015) (quotation omitted).

Here, the hearing judge had ample reasons to conclude that Mr. Taniform's explanations were not credible and that he had knowingly and intentionally misled Mr. Fon, Ms. Fongum, and Ms. Hargrove.[5] Among other things, despite his representations to the contrary, Mr. Taniform had to have known that he had never signed a "skeletal" motion, never prepared and filed a supplemental motion, never called the BIA to check on the status of the matter, and never had any basis for leading Mr. Fon to believe that he was on top of

---

[5] Notably, Mr. Taniform does not except to the finding that he told Mr. Fon numerous times that he would check with BIA about the status of the motion but never did.

the matter. Accordingly, we overrule Mr. Taniform's exception to the hearing judge's finding that he made multiple misrepresentations in the Fon matter and that his testimony was not credible.

### 2. *The Fozao Matter*

Mr. Taniform excepts to the hearing judge's finding that "the Respondent knowingly and intentionally misrepresented to Felix that Clovis's appeal and his application for parole were going well." Here again, according to Mr. Taniform, although his statements were inaccurate and misleading, they were not made for personal gain. He contends that he was justified in making these statements because he intended to file the brief late and ask the court's permission to accept it late. Had that occurred, he contends, Clovis's case would have been "back on track."

For self-evident reasons, Mr. Taniform's attempt to rationalize his actions in this manner only substantiates the hearing judge's finding. Accordingly, we overrule his exception to the hearing judge's finding that he made knowing and intentional misrepresentations in the Fozao matter.

### 3. *Bar Counsel's Investigation*

Mr. Taniform excepts to the hearing judge's finding that he made a knowingly false and intentionally misleading statement to Bar Counsel by attempting to rationalize his misrepresentations to Ms. Fongum and Ms. Hargrove—that the motion had been filed—on the basis that Mr. Fon's file had been placed in the completed files cabinet. According to Mr. Taniform, his answer was merely incomplete because he did not tell Bar Counsel

16

that he had assigned responsibility for the motion to Mr. Mundi. Again, we are not persuaded.

The hearing judge determined that Mr. Taniform's attempt to shift responsibility to Mr. Mundi was self-serving, unsupported, and not credible. Moreover, as the hearing judge observed "[a]t trial, [Mr. Taniform] acknowledged that he never looked at Mr. Fon's client file because he knew that it did not contain a copy of the motion to reopen." There is, therefore, ample evidence to support the hearing judge's finding that Mr. Taniform intentionally and knowingly misled Bar Counsel.

Similarly, Mr. Taniform excepts to the hearing judge's finding that he made a knowingly and intentionally false statement to Bar Counsel when he rationalized his failure to file the brief in Clovis's matter on the same basis—that the file had mistakenly been moved to the completed files cabinet. Mr. Taniform contends that his misrepresentation to Bar Counsel stemmed from his inadvertent cutting and pasting of the same language he used in his response to Bar Counsel in the Fon matter, and was therefore not intentional. Again, the hearing judge had an adequate evidentiary basis to conclude that because Mr. Taniform knew that no brief had been filed, his statement to Bar Counsel was knowingly and intentionally false.

We therefore overrule Mr. Taniform's exceptions to the hearing judge's findings that he knowingly and intentionally misled Bar Counsel during its investigation.

**B.** ***Exceptions to the Hearing Judge's Findings on Mitigating Factors***

We recognize the following mitigating factors in considering the appropriate sanction:

17

(1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to [Bar Counsel] or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the M[A]RPC; and (14) unlikelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277-78 (2016) (citing *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 506-07 (2015)).

The hearing judge found that Mr. Taniform proved by a preponderance of the evidence the mitigating factors of: (1) absence of prior attorney discipline, (2) personal or emotional problems, (3) inexperience in the practice of law, and (4) unlikelihood of repetition of the misconduct. As to the mitigating factor of personal or emotional problems, the hearing judge explained that, during law school, Mr. Taniform suffered from mental health issues for which he sought professional help and was diagnosed with anxiety and depression. The hearing judge noted that Mr. Taniform had been treated with medication and counseling.

Mr. Taniform excepts to the hearing judge's failure to find: (1) an absence of a dishonest or selfish motive, (2) timely effort to make restitution, (3) cooperative attitude towards the attorney disciplinary proceeding, (4) character or reputation, and (5) remorse.

18

The short answer is that, as explained above, the hearing judge was in the best position to assess the credibility and persuasiveness of Mr. Taniform's and his character witness's testimony, *see Barton*, 442 Md. at 122, and the hearing judge cannot be faulted for not finding these mitigating factors here. Given Mr. Taniform's repeated misrepresentations to his clients, their families, and Bar Counsel, his failure to return the fees after demand by his clients, his failure to take any action to rectify his omissions while he was still representing Mr. Fon and Clovis, and his efforts to shift responsibility for his misconduct to Mr. Mundi, the hearing judge was well within her discretion when she declined to find these additional mitigating factors.[6] We therefore overrule Mr. Taniform's exceptions to the hearing judge's failure to do so.

## C. *Exceptions to the Hearing Judge's Findings on Aggravating Factors*

The Court considers the following aggravating factors:

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

---

[6] Mr. Taniform's character witness, Yomba Yokwan, a close friend who considered Mr. Taniform like a brother, testified that Mr. Taniform was dependable, hard-working, kind, a good friend, a good father, and conscientious. While obviously complimentary, we do not question the hearing judge's failure to include character and reputation as a mitigating factor based solely on the testimony of one very good friend.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018).

The hearing judge found that Bar Counsel proved by clear and convincing evidence: (1) a dishonest or selfish motive, (2) a pattern of misconduct, and (3) vulnerability of the victims. Mr. Taniform excepts to each of these findings.

### 1.    *A Dishonest or Selfish Motive*

The hearing judge found that Mr. Taniform had a selfish or dishonest motive:

> when he made repeated knowing and intentional misrepresentations to Mr. Fon, Ms. Fongum, and Ms. Hargrove in an effort to conceal his failure to file the motion to reopen. The Respondent demonstrated a dishonest and selfish motive in the Fozao matter when he intentionally misrepresented to Felix that everything was "ok" with Clovis's case, despite having failed to draft or file the brief by the May 27 deadline. In both the Fon and Fozao matters, the Respondent agreed to the representation, accepted funds, and then failed to perform the work for which he was retained essentially abandoning the clients. While there doesn't seem to be a selfish motive for failing to do this work as requested, the selfish motive comes in when Respondent fails to answer honestly and fails to respond at all to the inquires in order to avoid the problem or deflect the responsibility.

According to Mr. Taniform, Bar Counsel did not prove a dishonest or selfish motive by clear and convincing evidence. Our independent review of the record confirms that the hearing judge had a sufficient evidentiary basis for finding a dishonest and selfish motive; accordingly, we overrule Mr. Taniform's exception to that finding.

### 2.    *A Pattern of Misconduct*

The hearing judge found that Mr. Taniform engaged a pattern of misconduct. The hearing judge explained:

> There is also a pattern of misconduct present in these situations. Not only does Respondent fail to file petitions in both the Fon and Fozao matter, but he then repeatedly is dishonest in saying that he has filed them. He fails to admit his error and continues to deny. At some point in both cases, he follows

20

the denials with being nonresponsive to his clients and their families who are looking to determine the status of the filings.

Mr. Taniform excepts to this finding because, he contends, these two matters occurred during the same five-month period.

A pattern of misconduct can be demonstrated "by multiple violations over time, or a series of acts with one goal." *Sperling*, 459 Md. at 276. In *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 406 (2011), we found that Mr. Coppola's "series of acts clearly formed a pattern of misconduct, albeit with one goal in mind. One goal, though, does not obviate that Coppola engaged in a series of acts over a number of days." *See also Shuler*, 443 Md. at 500 (finding a pattern of misconduct evidenced by the failure to appear or by appearing late at multiple hearings, all in one case over a three-month period).

Here, Mr. Taniform engaged in a series of wrongful acts over a period of five months with two different clients. Although arguably over a short period of time, Mr. Taniform nonetheless made multiple misrepresentations to Mr. Fon, Mrs. Fongum, and Ms. Hargrove to hide the fact that he completely neglected Mr. Fon's case. Similarly, in the Fozao matter, on multiple occasions, Mr. Taniform made misrepresentations to Felix, again to hide the fact that he had neglected to file a brief on Clovis's behalf.

Citing to *Attorney Grievance Comm'n v. Riely*, 471 Md. 458, 500-01 (2020), Mr. Taniform claims that this Court should not look at how many acts the attorney committed, but instead how many "'episodes' those violations relate to." According to Mr. Taniform, the record shows that he committed only two "episodes" during the same time frame.

21

Mr. Taniform's reliance on *Riely* is misplaced. In *Riely*, we overruled Bar Counsel's exception to the hearing judge's failure to find the aggravating factor of a pattern of misconduct. There, we stated:

> Mr. Riely had what appears to be a high-volume immigration practice that, for the prior 30 years, had apparently been without incident. We decline to characterize these two matters as a "pattern of misconduct."

*Id.* at 501, n.21.

Unlike in *Riely*, Mr. Taniform's misconduct cannot be juxtaposed against a 30-year, otherwise unblemished career. Rather, as Mr. Taniform acknowledges, he had only two years of experience. Further, it warrants pointing out that where one hearing judge may find that Bar Counsel proved the factor by clear and convincing evidence, another hearing judge presented with the same evidence may reasonably find otherwise. Just because we declined in *Riely* to find fault in a hearing judge's failure to find this aggravating factor does not imply that a hearing judge presented with similar facts in another case would not be entitled to find this factor.

Accordingly, we overrule Mr. Taniform's exception to the hearing judge's finding of the aggravating factor of a pattern of misconduct.

### 3. *The Victim's Vulnerability*

Based on the evidence, the hearing judge was not inclined to find victim vulnerability as an aggravating factor because both Mr. Fon and Clovis had help from family members to retain and communicate with counsel, both clients were able to communicate with Mr. Taniform when they could reach him, and both were neither of a vulnerable age nor lacking in cognitive abilities. The hearing judge nevertheless felt

22

constrained to find this aggravating factor because, in *Riely*, we stated that "[i]mmigrants, especially those at risk of removal from the United States, are a marginalized group that this Court has recognized as vulnerable victims of professional misconduct." 471 Md. at 500. The hearing judge reasonably interpreted this as a per se rule that immigration clients are automatically deemed vulnerable.

Mr. Taniform excepts to the hearing judge's finding of this factor, and urges us to reject such a per se rule. According to Mr. Taniform,

> If immigrant clients are to be considered vulnerable victims in every case, lawyers specializing in immigration law will always be subject to an aggravating factor in attorney grievance matters. That alone could be a chilling effect for those wishing to pursue immigration law as a practice area. While the immigrant clients in these matters were certainly vulnerable in that they faced removal, they were not vulnerable within the class of immigrant clients – as the Court below noted. Neither of the clients at issue were especially young or senior nor were they laboring under a disability that would make them particularly vulnerable. Bar Counsel did not prove this aggravating factor by clear and convincing evidence and the Court below should not have made this finding of fact.

Mr. Taniform traces our statement in *Riely* about the vulnerability of immigration clients to *Attorney Grievance Comm'n v. Brisbon*, 422 Md. 625, 642 (2011) (quotation omitted), where we recognized that the Maryland Immigration Consultant Act was enacted to "offer simple protection to extremely vulnerable people, largely unable or unwilling as a practical matter to defend themselves, from being preyed on." According to Mr. Taniform, our recognition that immigration clients are generally vulnerable and need protection does not translate to a blanket rule that the aggravating factor of the victim's vulnerability must automatically be found.

23

We recently addressed an argument similar to Mr. Taniform's in *Attorney Grievance Comm'n v. Moawad*, 475 Md. 424, 484-85 (2021), where one of the immigration client victims was an "accomplished medical doctor" who made a career in the United States as an emergency medical technician. We rejected the argument that the vulnerability of the victim factor should not be considered, stating:

> This Court has emphasized a need to protect the public by "impress[ing] upon . . . lawyers, the importance of diligent representation and adequate communication in immigration cases." *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 352–53, 132 A.3d 196 (2016); *see also Attorney Grievance Comm'n v. Thomas,* 440 Md. 523, 558, 103 A.3d 629 (2014). Although the circumstances of Mr. Togbetse, Dr. Hao, and Ms. Liang may differ from many immigrants' experiences, this fact does not prevent each of the clients in this case from being classified as vulnerable. Mr. Moawad's actions in this case caused substantial prejudice that risked impacting his clients' ability to maintain jobs and homes in the United States. The potential to be removed from the country is a grave risk that is specific to immigrants who do not have permanent status within the United States, thereby making them vulnerable regardless of what occupation or socioeconomic status they have attained. Attorneys play an important role in protecting this vulnerable class, and hence attorneys who provide substandard services to immigrants should, in turn, face significant consequences.

*Id*. at 485.

Time will ultimately tell whether we spoke too broadly in *Moawad* and in prior cases, but we are not persuaded on these facts that Mr. Taniform's clients should not be deemed vulnerable for purposes of this aggravating factor. Accordingly, we overrule Mr. Taniform's exception to the hearing judge's finding of this factor.

## D.     *The Hearing Judge's Conclusions of Law*

From the foregoing factual findings, the hearing judge found by clear and convincing evidence that Mr. Taniform violated MARPC 1.1, 1.3, 1.4(a) and (b), 1.15,

1.16(d), 4.1, 8.1(a) and (b), and 8.4(a), (c), and (d), and Maryland Rule 19-407. Mr. Taniform admits to violating MARPC 1.1, 1.3, 1.4(a) and (b), and 8.4(a) and (d), and Rule 19-407, but excepts to the hearing judge's conclusion that he violated MARPC 1.15, 1.16(d), 4.1, 8.1(a) and (b), and 8.4(c).

We review all conclusions of law de novo, even if no exceptions are taken. As discussed below, we conclude that the hearing judge's findings are supported by clear and convincing evidence. We will first discuss the uncontested conclusions of the hearing judge, and then address the conclusions to which Mr. Taniform excepts.

### 1. *Violations that Mr. Taniform Concedes*

#### a. *MARPC 1.1 (Competence)*

MARPC 1.1 requires attorneys to provide competent representation to all clients. To do so, an attorney must apply "appropriate knowledge, skill, thoroughness, and preparation to the client's issues." *Attorney Grievance Comm'n v. Brooks*, 476 Md. 97, 131 (2021) (quoting *Attorney Grievance Comm'n v. Rheinstein*, 466 Md. 648, 709 (2020), c*ert. denied*, ___ U.S. ___, 141 S. Ct. 370 (2020)).

An attorney can violate this rule by failing to file necessary motions or failing to appear at a hearing, *Attorney Grievance Comm'n v. Walker-Turner*, 428 Md. 214, 226-28 (2012); *Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 35 (2014) (quoting *Attorney Grievance Comm'n v. Shakir*, 427 Md. 197, 205 (2012)), or by failing to act in a timely manner, causing harm to the client, *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012).

25

Clear and convincing evidence supports the conclusion that Mr. Taniform did not provide competent representation to his clients as required under Rule 1.1.

### b. MARPC 1.3 (Diligence)

MARPC 1.3 requires an attorney to "act with reasonable diligence and promptness in representing a client." This Rule can be violated when an attorney fails to communicate with the client or fails to "advance the client's cause or endeavor[.]" *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 208 (2020) (quoting *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 699 (2019)); *see also Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 340 (2020) (noting that the same justifications for finding a violation of MARPC 1.1 for incompetence can support a finding of a violation of 1.3).

The hearing judge found that Mr. Taniform violated this Rule in the Fon matter when he failed to file a motion and failed to check with the BIA as to whether the motion was filed. The hearing judge found that Mr. Taniform violated this Rule in the Fozao matter when he failed to timely file the brief and failed to file a motion after the appeal was dismissed.

Clear and convincing evidence supports the hearing judge's finding that this Rule was violated.

### c. MARPC 1.4 (Communication)

MARPC 1.4 provides:

(a) An attorney shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;
    (2) keep the client reasonably informed about the status of the matter;

26

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MARPC 1.4 can be violated if a client has made several "reasonable requests for information, which may include a general status update or for documents pertaining to the case[,]" to no avail. *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 349 (2020); *Attorney Grievance Comm'n v. Dailey*, 474 Md. 679, 705 (2021). An attorney also violates this Rule when he misrepresents a case's status to a client. *Attorney Grievance Comm'n v. Fox*, 417 Md. 504, 517 (2010).

The hearing judge concluded that Mr. Taniform violated MARPC 1.4(a) when he "failed to adequately communicate with or respond to requests for information from his clients and his clients' family members in the Fon and Fozao matters." Mr. Taniform made misrepresentations to Mr. Fon, Ms. Fongum, and Ms. Hargrove about the status of the Fon matter, and to Felix about the status of the Fozao matter. The hearing judge concluded that Mr. Taniform violated Rule 1.4(b) by his "failure to advise Mr. Fon that he had not filed the motion to reopen" and "repeated misrepresentations to the contrary" that "prevented Mr. Fon from making informed decisions regarding his immigration matter[.]" Similarly, in the Fozao matter, the hearing judge found that Mr. Taniform's misrepresentations "prevented Felix and Clovis from making informed decisions about [Clovis's] immigration matter[.]"

27

Clear and convincing evidence supports the hearing judge's finding that this Rule was violated.

### d. MARPC 8.4 (Misconduct)

MARPC 8.4, in relevant part, states:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(d) engage in conduct that is prejudicial to the administration of justice[.]

When an attorney's actions "bring the legal profession into disrepute[,]" he has committed a violation of MARPC 8.4(d). *Attorney Grievance Comm'n v. Plank*, 453 Md. 446, 465 (2017) (citation omitted). This includes "acts of dishonesty and incompetence, [and even] intentional representations to Bar Counsel[.]" *Dailey*, 474 Md. at 710.

The hearing judge found that Mr. Taniform's other rule violations also constituted violations of MARPC 8.4(a).

The hearing judge found that Mr. Taniform violated MARPC 8.4(d) when he "undertook the representation of two immigration clients, failed to perform the work for which he was retained, and made knowing and intentional misrepresentations to the client and the client's family members regarding the status of their cases." Clear and convincing evidence supports the hearing judge's finding that sections (a) and (d) of Rule 8.4 were violated.

28

### e. *Maryland Rule 19-407 (Attorney Trust Account Record-Keeping)*

Rule 19-407 provides that:

**(a) Creation of Records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1) *Attorney Trust Account Identification.* An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

(2) *Deposits and Disbursements.* A record for each account that chronologically shows all deposits and disbursements, as follows:

(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

(3) *Client Matter Records.* A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

(B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(4) *Record of Funds of the Attorney.* A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 19-408 (b).

**(b) Monthly Reconciliation.** An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 19-408 (b), and the adjusted month-end financial institution statement balance. The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

**(c) Electronic Records.** Whenever the records required by this Rule are created or maintained using electronic means, there must be an ability to print a paper copy of the records upon a reasonable request to do so.

**(d) Records to be Maintained.** Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial institution, and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the date the record was created.

The hearing judge found that Mr. Taniform violated this Rule by failing to provide Bar Counsel with the requested client records. Mr. Taniform does not contend otherwise. Clear and convincing evidence supports the hearing judge's finding that this Rule was violated.

### 2. *Violations to Which Mr. Taniform Excepts*

Mr. Taniform excepts to the hearing judge's conclusions that he violated Rules 1.15, 1.16(d), 4.1, 8.1(a) and (b), and 8.4(c). We overrule each exception.

#### a. *MARPC 1.15 (Safekeeping of Property)*

Rule 1.15 provides, in relevant part, that:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and

records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

An attorney violates Rule 1.15 when, without the client's consent, he either fails to deposit client funds into an attorney trust account or deposits client funds into a personal or operating account before those funds are earned. *Smith-Scott*, 469 Md. at 350 (citation omitted); *Attorney Grievance Comm'n v. Van Nelson*, 425 Md. 344, 355-56 (2012).

The hearing judge found that Mr. Taniform violated this Rule because he failed to safeguard Felix's funds until they were earned. According to the hearing judge, without his client's consent, Mr. Taniform deposited the $2,000 retainer into his operating account before it was earned and then transferred $1,050 of those funds into his attorney client trust account at a time when no fees were due and owing. At his hearing, Mr. Taniform insisted that he had earned the $950 left in his operating account. The hearing judge found that Mr. Taniform had only done "some minimal work" on Clovis's case and that he failed to provide any records, including timesheets or invoices, to substantiate his claim that he had earned that fee.

31

Mr. Taniform contends that, even in the absence of timesheet records, "it is clear that [he] had obviously met with the client, reviewed the status of the case and filed pleadings with the immigration court" and that he had earned the money he retained in his operating account. To the contrary, given that the evidence establishes that Mr. Taniform filed only an appearance and notice of appeal, did not file the appeal brief that he had been hired to file, and did not file the application for parole he had agreed to file, we conclude that clear and convincing evidence supports the hearing judge's conclusion that Mr. Taniform violated Rule 1.15. *See Attorney Grievance Comm'n v. Thomas*, 409 Md. 121, 163-65 (2009); *Attorney Grievance Comm'n v. Stinson*, 428 Md. 147, 172 (2012).

### b. *MARPC 1.16 (Declining or Terminating Representation)*

MARPC 1.16(d) provides:

> Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

The hearing judge found that Mr. Taniform violated Rule 1.16(d) by failing to timely refund to Mr. Fon and Mr. Fozao their unearned retainers. Mr. Taniform takes exception to this finding, arguing that he returned the money within 60 days of being requested to do so. As stated above, Mr. Taniform failed to return the funds on his clients' demands and only did so after complaints with the Commission were filed. Under these circumstances, we cannot find fault with the hearing judge's failure to credit Mr. Taniform with promptly returning unearned funds to his clients.

We find that clear and convincing evidence supports the hearing judge's conclusion that Mr. Taniform violated Rule 1.16(d) by failing to return unearned fees. *See Attorney Grievance Comm'n v. Lang*, 461 Md. 1, 54 (2018); *Attorney Grievance Comm'n v. Moore*, 447 Md. 253, 269 (2016); *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 333 (2013).

### c. *MARPC 4.1 (Truthfulness in Statements to Others)*

MARPC 4.1(a) provides:

> In the course of representing a client an attorney shall not knowingly:
> (1) make a false statement of material fact or law to a third person; or
> (2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

The hearing judge found that Mr. Taniform violated this Rule when he made knowing and intentional material misrepresentations to Mr. Fon, Ms. Fongum, Ms. Hargrove, and Bar Counsel about the Fon matter, and knowing and intentional material misrepresentations to Felix in the Fozao matter.

Mr. Taniform contends that he did not violate this Rule because he did not make willful and intentional misrepresentations for personal gain. For the reasons explained above in the discussion about Mr. Taniform's exceptions to the hearing judge's factual findings, we conclude that there is clear and convincing evidence to support the hearing judge's finding that Mr. Taniform violated this Rule.

### d.  MARPC 8.1 (Bar Admission and Disciplinary Matters)

MARPC 8.1 provides:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6.

The hearing judge concluded Mr. Taniform violated MARPC 8.1(a) in his letter to Bar Counsel by providing a false explanation to Bar Counsel for his misrepresentations to Ms. Fongum, Ms. Hargrove, and Felix—namely, that he wrongly believed the motion had been filed because his clients' files had been misfiled in the completed files cabinet.  The hearing judge found that Mr. Taniform admitted he never checked the contents of Mr. Fon's file because he knew the motion to reopen was not in there and that he also admitted that his statement to Bar Counsel for the Fozao matter was false.  The hearing judge also observed that Mr. Taniform never corrected his misrepresentations to Bar Counsel.

Similarly, the hearing judge found that Mr. Taniform violated Rule 8.1(b) when he failed, in response to Bar Counsel's inquiry, to provide his complete client file and trust account records relating to his representation of Clovis.

Mr. Taniform excepts to the hearing judge's conclusion that he violated this Rule, again claiming that he did not undertake the wrongful actions for personal gain.  But whether he did so for personal gain is of no moment.  We find that clear and convincing

evidence supports the hearing judge's conclusion that Mr. Taniform violated this Rule in his letters to Bar Counsel and in his failure to provide his client files and records.

### e.  *MARPC 8.4 (Misconduct)*

MARPC 8.4(c) states:

It is professional misconduct for an attorney to:

\* \* \*

(c)  engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

"As used in this Rule, a misrepresentation is made when the attorney knows the statement is false, and cannot be the product of mistake, misunderstanding, or inadvertency." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 698 (2013) (cleaned up; quotations omitted). "Attorneys violate [MARPC] 8.4(c) when they misrepresent to their clients the status of their clients' cases, or conceal material information from their clients, even if they have not misrepresented explicitly the information." *Attorney Grievance Comm'n v. Mitchell*, 445 Md. 241, 261 (2015) (quotation omitted).

Here, the hearing judge concluded that Mr. Taniform violated Rule 8.4(c) in the Fon matter "each and every time he made a misrepresentation or misleading statement to Mr. Fon about the status of his immigration case[,]" when he made misrepresentations to Ms. Fongum and Ms. Hargrove, and when he made misrepresentations to Bar Counsel that violated Rule 8.1(a). The hearing judge also concluded that Mr. Taniform violated Rule 8.4(c) in the Fozao matter when he knowingly and intentionally misrepresented to Felix that Clovis's case was going well.

Mr. Taniform excepts to these conclusions, arguing that there was not clear and convincing evidence that he violated the Rule and that he did not make the representations for personal gain. Here, again, the evidence supports the conclusion that Mr. Taniform made misrepresentations to his clients, their families, and Ms. Hargrove about the status of his clients' cases, made misrepresentations to Bar Counsel about the cases, and concealed material information from his clients. This is ample clear and convincing evidence to support the hearing judge's conclusion that this Rule was violated. *See Mitchell*, 445 Md. at 261.

## SANCTION

Having overruled Mr. Taniform's exceptions and adopted the hearing judge's factual findings and conclusions of law, it falls upon us to determine the appropriate sanction. In doing so, we are mindful that the purpose of sanctioning an attorney is to protect the public from those unfit to practice law, not to punish the attorney. *Attorney Grievance Comm'n v. Karambelas*, 473 Md. 134, 176-77 (2021). We consider a variety of factors, including the rules that were violated, the mental state of the attorney, the injuries, if any, caused by the attorney's misconduct, and the relevant aggravating and mitigating factors. *Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277 (2016).

The Commission recommends disbarment as the appropriate sanction. In contrast, Mr. Taniform urges us to impose an indefinite suspension with the right to apply for reinstatement after a defined period. Based on our consideration of the relevant facts and circumstances, and guided by our prior decisions in comparable contexts, we shall impose an indefinite suspension, with the right to apply for reinstatement after 18 months.

"The virtues of character, honesty, and integrity are the cornerstone of our legal profession." *Attorney Grievance Comm'n v. Vasiliades*, 475 Md. 520, 564 (2021). In *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418 (2001), we found that disbarment is often the appropriate sanction when an attorney's wrongful actions involve dishonesty. We emphasized that:

> [o]nly if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Id.* at 414; *see also Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 200 (2015) (finding that dishonesty alone could be the basis for disbarment).

In our recent decision in *Attorney Grievance Commission v. Collins*, 477 Md. 482, 529-30 (2022), we reexamined when intentional dishonest conduct warrants disbarment under the standard set forth in *Vanderlinde*, 364 Md. at 376. There, we analyzed cases post-*Vanderlinde* and observed that disbarment has generally been warranted in cases where the intentional dishonest conduct has also been accompanied by "theft, fraud, harm to a client or third party, or the intentional misappropriation of funds." *Collins*, 477 Md. at 530.

But, when there has been no misappropriation of money, intentional dishonesty has not *always* resulted in disbarment. *See, e.g.*, *Attorney Grievance Comm'n v. Keating*, 471 Md. 614, 656 (2020) (sanctioning attorney to an indefinite suspension with the right to reapply for reinstatement after six months after finding that the attorney, who had had a long and respected career, acted without a selfish motive, and took action to try to mitigate a potential conflict of interest and protect the interests of her client's estate and legatees);

37

*Attorney Grievance Comm'n v*. *Lane*, 367 Md. 633, 646-47 (2002) ("We have not, however, always found disbarment to be the appropriate sanction where there is misrepresentation involved, especially where misappropriation of money was not involved.").

Determining the appropriate sanction is not a science. Far from it. There is no algorithm to generate an appropriate sanction from the various combinations and permutations of rule violations, mitigating and aggravating factors, and fact patterns. Thus, as we have repeatedly said, each case must be assessed on its specific facts and circumstances. *See e.g., Attorney Grievance Comm'n v. Malone*, ___ Md. ___, 2022 WL 17074738, at *22 (2022); *Attorney Grievance Comm'n v*. *Bonner*, 477 Md. 576, 621-22 (2022) (citing *Attorney Grievance Comm'n v*. *Palmer*, 417 Md. 185, 211 (2010)). We can, of course, look for guidance in prior similar cases.

In recommending disbarment, the Commission relies on *Attorney Grievance Commission v. Park*, 427 Md. 180 (2012). There, the respondent was retained by two individuals to apply for "residence status, employment authorization, and other immigration benefits." *Id*. at 185. He failed to provide follow-up information requested by the immigration authorities, failed to keep his clients informed, and otherwise neglected his clients' matters, resulting in the denial of his clients' applications. *Id*. at 185-87. In response to the bar complaint, the respondent initially informed Bar Counsel that he was suffering from severe depression and partially responded to Bar Counsel's request for information. *Id*. at 186. But then he failed to respond to Bar Counsel's follow-up letters. Ultimately, he was found in violation of Rules 1.1, 1.3, 1.4, 1.16, and 8.4. *Id*. at 187.

38

We observed that prior cases based on similar facts supported the sanction of disbarment, and we noted that "[i]n the absence of mitigation (as here), disbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees." *Id*. at 196. Although Mr. Taniform did prove mitigating factors, Bar Counsel's reliance on *Park* is certainly not misplaced.

Bar Counsel also relies on *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523 (2014). There, the respondent was retained to represent an immigration client in removal proceedings. *Id.* at 531-32. He filed an untimely application for asylum in the wrong forum. *Id.* at 532. He then told his client not to appear at the client's scheduled removal hearing because he said that it was canceled. *Id.* In reality, the hearing had not been canceled, and at the hearing, the client was ordered to be removed *in absentia*. *Id.* Subsequently, the respondent failed to respond to the multiple attempts to contact him and also failed to inform his client of the status of his case. *Id.* After the client submitted a complaint to Bar Counsel, the respondent failed to respond to Bar Counsel's requests for information. *Id.* Ultimately, he was found to have violated Rules 1.1, 1.3, 1.4, 8.1, and 8.4. *Id.*

In determining the appropriate sanction, we first recognized that because the respondent did not participate in the proceedings, there were no mitigation factors to consider, and then determined that the relevant aggravating factors were (1) bad faith obstruction of the disciplinary proceedings, (2) refusal to acknowledge the wrongful

39

conduct, (3) vulnerability of the victim, and (4) indifference to making restitution. *Id.* at 557. We observed that "[d]isbarment is warranted in cases involving flagrant neglect of client affairs, including the failure to communicate with clients or respond to inquiries from Bar Counsel." *Id.* at 558. Because the respondent "failed to communicate with his client, failed to complete any of the work that he was retained to complete, and failed to participate in these proceedings in any way[,]" we determined that disbarment was the appropriate sanction. *Id.* Again, Bar Counsel's reliance on *Thomas* is reasonable.

In addition to *Park* and *Thomas*, there are other cases involving client neglect and misrepresentation that could support the sanction of disbarment, many of which are summarized in *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 396-405 (2015) (discussing *Lane*, 367 Md. 633, *Attorney Grievance Comm'n v. Brown*, 426 Md. 298 (2012), *Attorney Grievance Comm'n v. Lawson*, 428 Md. 102 (2012), *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565 (2005), *Attorney Grievance Comm'n v. Davy*, 435 Md. 674 (2013), and *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337 (2006)).

And, of course, there is no shortage of cases of serious client neglect or abandonment, including some that involved intentional dishonesty, in which we stopped short of disbarring the attorney in favor of an indefinite suspension. *See, e.g.*, *Attorney Grievance Comm'n v. Lee*, 393 Md. 546, 557, 567 (2006) (indefinite suspension for violations of Rules 1.3, 1.4(a)(2), 1.4(a)(3), 1.16(d), 3.2, 8.1(b), and 8.4(d)); *Attorney Grievance Comm'n v. David*, 331 Md. 317, 318-19, 324 (1993) (indefinite suspension with right to apply for reinstatement after six months for violating Rules 1.1, 1.3, 1.4(a), 1.5(a), 1.15(b), 1.16(d), 5.3(b), 8.1(a), 8.1(b), 8.4(c) and 8.4(d)); *Attorney Grievance Comm'n v.*

*Mooney*, 359 Md. 56, 97-98 (2000) (indefinite suspension with right to apply for reinstatement after 90 days for violating Rules 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 5.1(a), 5.3(b) 8.4(c), and 8.4(d)); *Attorney Grievance Comm'n v. Sperling*, 432 Md. 471 (2013) (indefinite suspension for client neglect, and misrepresentations to client and the court).

In settling upon a sanction of indefinite suspension, we find five cases particularly helpful. In *Attorney Grievance Comm'n v. Garfield*, 369 Md. 85 (2002), we sanctioned an attorney to an indefinite suspension with the right to reapply after thirty days for violations of Rules 1.1, 1.3, 1.4, 1.16, and 8.4. There, the attorney neglected his professional responsibilities to his clients, resulting in cases being dismissed for want of prosecution and barred by the statute of limitations. *Id.* at 92. In mitigation, the attorney established that his misconduct was directly attributable to the fact that he had been abusing drugs. *Id.* at 94. He cooperated with Bar Counsel, apologized for his failings, and offered to make his clients whole. *Id.* In sanctioning him, we recognized that the attorney had a long and otherwise reputable career and stated: "'[w]e are not unmindful of the benefits of returning a rehabilitated attorney to the productive practice of law,' and recognize that we 'could be doing a disservice by forever barring' Respondent from 'returning to the practice of law' or by prolonging his absence to such an extent that it would be difficult for him to return." *Id.* at 107 (quoting *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 365 (1993)).

In *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294 (2016), in her representation of multiple immigration clients, Ms. Landeo:

failed to provide competent representation; failed to provide diligent representation in time-sensitive immigration matters and waited months to file documents in three separate immigration cases; failed to keep her clients reasonably informed about the status of their matters, promptly comply with her clients' reasonable requests for information, and explain matters to the extent reasonably necessary to permit her clients to make informed decisions regarding the representation; charged and collected attorney's fees for services that she failed to provide to any meaningful degree or at all; failed to deposit attorney's fees and filing fees into an attorney trust account; failed to deposit attorney's fees into an attorney trust account prior to those fees' being earned and without the clients' informed consent, confirmed in writing, to a different arrangement; failed to reasonably protect her clients' interests and timely surrender papers and property to which the clients were entitled; and engaged in conduct that would negatively impact the perception of the legal professional of a reasonable member of the public.

*Id.* at 304. As a result, we found that she violated Rules 1.1, 1.3, 1.4, 1.15, 1.16, and 8.4. Among the harms suffered by her clients, one client was deported. *Id.* at 317, 349-50.

We found that Ms. Landeo "acted intentionally in depositing her clients' attorney's fees and filing fees into an account other than an attorney trust account, and that [she], at a minimum, acted negligently, if not knowingly, in failing to provide competent and diligent representation and in failing to adequately communicate with her clients." *Id.* at 349-50. We noted that her representation could be characterized "as being 'marked by serious neglect and inattention.'" *Id.* at 353 (quoting *David*, 331 Md. at 323). We found only one mitigating factor, the absence of prior attorney discipline, and five aggravating factors: the vulnerability of the victims, multiple violations, refusal to acknowledge her misconduct's wrongful nature, a pattern of misconduct, and substantial experience in the practice of law. *Id.* at 350-53.

After reviewing sanctions in similar cases (including *Lee*, *David*, and *Mooney*, among others), we concluded that "although certainly egregious and displaying a gross

lack of competence, and a pattern of lack of diligence and adequate communication, [her] misconduct did not rise to a level warranting disbarment." *Id.* at 354.

Another instructive case is *Attorney Grievance Comm'n v. Riely*, 471 Md. 458 (2020). There, we sanctioned an immigration attorney to an indefinite suspension with the right to apply for reinstatement after one year. *Id.* at 506. He had been a practitioner for over 35 years. *Id.* at 466. Late in his career, however, he neglected two of his clients, which "at least temporarily put those clients at risk of removal from the United States." *Id.* at 466. He also made misrepresentations to one client, an ICE agent, and Bar Counsel. *Id.* We found that his actions violated Rules 1.1, 1.3, 1.4, 1.16, 4.1, 8.1, and 8.4. *Id*. at 500-01.

We also found several mitigating factors: no prior disciplinary record, good character and reputation, remorse, cooperating with Bar Counsel, and good faith efforts to rectify his misconduct. *Id.* at 501-02. Ultimately, we concluded that Mr. Riely's misconduct "was not motivated by a lawyer's decision to profit at the expense of his clients, but began as a failure to attend to the details of the matters he had agreed to undertake on behalf of those clients and, most seriously, his effort to minimize and conceal his own mistakes in that regard." *Id.* at 505.

In *Riely*, we found instructive *Attorney Grievance Comm'n v. Koven*, 361 Md. 337 (2000), a case with similar facts. *Riely.* 471 Md. at 505-06. In *Koven*, although the attorney:

> was paid his full fee for that work, [he] prepared only two of [three] applications [for alien labor certifications] and never filed any of them. He lied repeatedly to the clients that he had made the filings and created fictitious

43

> documents to lead them to believe that the government was processing their applications. When his representation was terminated, he never refunded the money that he had been paid. Nor did he cooperate with successor counsel or Bar Counsel.

*Riely*, 471 Md. at 506 (citing *Koven*, 361 Md. 337)). Mr. Koven violated the same rules that Mr. Riely violated plus Rule 8.4. We indefinitely suspended Mr. Koven with the right to reapply for reinstatement after two years.

Using our sanction in *Koven* as a guidepost, we concluded that Mr. Riely's conduct was comparatively less egregious, and therefore settled on a shorter wait period (one year) before he could apply for reinstatement. *Id.* at 506.

In *Attorney Grievance Comm'n v. Shapiro*, 441 Md. at 376, we indefinitely suspended an attorney who failed to inform his client that the Health Claims Arbitration Office had dismissed her claim due to his failure to attach a Certificate of Merit. We found that he violated Rules 1.2, 1.3, 1.4, 1.8, 1.16, and 8.4. He concealed this information for five years and led his client to believe that the case was proceeding. *Id.* He also falsely claimed that a settlement had been reached, met with his client about this fictional settlement, and then advised her that he did not have the money she was to receive from the settlement. *Id.* After analyzing several similar cases where the attorney had made misrepresentations, we found that the appropriate sanction was an indefinite suspension. *Id.* at 408.

In determining the appropriate sanction, we noted that the attorney's actions involved only one client and that no misappropriation of money was involved. Recognizing that the sanction must be tailored to the specifics of the case, we stated:

44

we tend to favor disbarment when attorneys' misrepresentations and deceitful actions are committed against multiple clients, are paired with violations of the rules pertaining to the proper handling of client or third party money or property, or are joined with a large number of other violations (whether of the M[A]RPC or the Maryland Code).

*Id.* at 399. Thus, notwithstanding the gravity of the misconduct, we concluded that an indefinite suspension was more appropriate than disbarment under the facts of that case.

We also indefinitely suspended the attorney in *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209 (2006). There, the attorney lost a client's file, failed to take any action on the case after filing the complaint, and misrepresented to his client that he was working on the case. *Id.* at 220. He contended that he did not inform the client about the lost file because he was embarrassed and that he frequently looked for the file. *Id.* at 224. We determined that his actions failed to evidence "that he acted out of a fraudulent or selfish motive." *Id.* Because his conduct involved only one client and one case and because no misappropriation of funds or criminal conduct was involved, we found that an indefinite suspension was the appropriate sanction. *Id.* at 227.

Armed with these cases as a guide, we now turn to the specific facts and circumstances of Mr. Taniform's case. Mr. Taniform's transgressions involved intentional dishonesty on matters going to the heart of the representation of his clients, including the status of their matters and his actions. He knowingly and intentionally misrepresented facts to his clients, their representatives, and Bar Counsel. He failed to promptly refund money to his clients, failed to properly communicate with them, and, as he acknowledged, neglected his clients' matters and provided incompetent representation.

45

The aggravating factors of a dishonest or selfish motive, a pattern of misconduct, and the victims' vulnerability were established. And, we hasten to point out, even if Mr. Taniform's clients were not or are not ultimately deported—about which we can only speculate—we have no difficulty finding that Mr. Taniform's misconduct did, indeed, harm his clients. They were lied to, their cases were compromised, and the uncertainty and delays resulting from Mr. Taniform's misconduct undoubtedly amplified the anxiety that any immigration client would reasonably expect to endure. Disbarment would not be out of the realm of reasonableness here.

.That said, the nature of the dishonesty and the mitigating factors present here nudge us toward a slightly less severe sanction. Mr. Taniform's misrepresentations were made in two cases, when he was less than three years out of law school, and while he was experiencing personal or emotional problems. He has not been previously disciplined. Mr. Taniform had little experience or training in running a law practice and was experiencing personal or emotional problems. Although the hearing judge reasonably found the aggravating factor of a selfish or dishonest motive, we are mindful that he did not commit his misconduct to profit at the expense of his clients, but rather, like Mr. Shapiro, because he "created a lie that snowballed over time." *See Shapiro*, 441 Md. at 407. In that regard, he ultimately, though belatedly, refunded the unearned fees to both clients. He did not engage in misappropriation, make a misrepresentation to a court, or commit any criminal offense. And finally, we ascribe great significance to the hearing judge's finding that Mr. Taniform is unlikely to repeat the misconduct in the future if he continues receiving counseling and implements a system for tracking cases and deadlines. In sum, the

46

circumstances presented here differ from those in recent years in which the *Vanderlinde* standard has been triggered, resulting in disbarment.

Accordingly, we shall indefinitely suspend Mr. Taniform with the right to apply for reinstatement after 18 months with the following two conditions. *First*, Mr. Taniform must demonstrate by a report of a mental health care professional, pre-approved by Bar Counsel, that he is capable of resuming the practice of law. The health care professional's report shall include a description of any necessary counseling or treatment plan. Any disagreement between Mr. Taniform and Bar Counsel over the approval of such mental health care professional shall be decided by this Court. *Second*, Mr. Taniform shall engage an attorney monitor for a one-year period upon reinstatement to the practice of law in Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST TERENCE TANIFORM**.

IN THE SUPREME COURT

OF MARYLAND*

Misc. Docket AG No. 40

September Term, 2021

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

TERENCE TANIFORM

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Concurring Opinion by Booth, J.

_____

Filed: December 16, 2022

*At the November 8, 2022 general election, the
voters of Maryland ratified a constitutional
amendment changing the name of the Court of
Appeals of Maryland to the Supreme Court of
Maryland. The name change took effect on
December 14, 2022.

I concur with all aspects of the Majority's opinion concerning the findings of fact, conclusions of law, and the appropriate sanction to be imposed in this case. I write separately to express my views on an issue that is not presented to the Court because neither party chose to raise it, and it is therefore waived. *See* Maj. Op. at 2 n.2. That said, I feel compelled to register my concern over the application of the choice of law provision set forth in the Maryland Attorneys' Rule of Professional Conduct ("MARPC") 19-308.5(b) (hereinafter "Rule 8.5(b)"). In this case, the Office of Bar Counsel's charges filed in its petition, its presentation to the hearing judge (including its proposed findings of fact and conclusions of law), and the hearing judge's consideration of the choice of law issue did not comply with Rule 8.5(b) and this Court's discussion and holdings in *Attorney Grievance Commission v. Tatung*, 476 Md. 45 (2021), and *Attorney Grievance Commission v. Bonner*, 477 Md. 576 (2022). I write to express my view on how Bar Counsel should file charges when another jurisdiction's professional rules are required to be applied under Rule 8.5(b), how the charges should be presented to the hearing judge, and how the hearing judge should consider and apply them.

*The Attorney Grievance Commission's Filing of Charges and Bar Counsel's Presentation of this Case*

This case involved two matters arising in connection with federal immigration proceedings. As we discussed in detail in *Tatung*, the Executive Office of Immigration Review ("EOIR") of the United States Department of Justice has promulgated regulations "to establish uniform regulations that govern the professional conduct of immigration attorneys and to ensure that the regulations are applied in a manner consistent with state

disciplinary authorities having jurisdiction over the same conduct." 476 Md. at 86. These regulations (hereinafter referred to as the "federal immigration professional") are codified at 8 C.F.R. pt. 1003.

As more fully discussed in the Majority's opinion, the matters which formed the basis for the charges filed in this case arose from Mr. Taniform's representation of clients in two separate immigration proceedings. In connection with these immigration matters, the Attorney Grievance Commission, through Bar Counsel, charged Mr. Taniform with violating the MARPC. In its petition for disciplinary or remedial action, Bar Counsel laid out the MARPC as the operative rules to be applied. In an alternative-style pleading, Bar Counsel charged Mr. Taniform with violating corresponding federal immigration professional rules, in the event this Court determined that "the federal immigration professional rules apply to any or all of the Respondent's conduct" under Maryland Rule 8.5(b).

On the first day of the hearing, Assistant Bar Counsel stated that the Commission had charged Mr. Taniform with violations of "the corresponding [] federal immigration rules regarding professional conduct for practitioners" and asked the hearing judge "to make findings under both the Maryland Rules and their corresponding immigration rules." On the second day, Assistant Bar Counsel reiterated that she was asking the hearing judge to make findings under both sets of rules. She went on to state, "[h]owever, because both sets of rules overlap, there's a lot of overlap, I only plan to really address the Maryland attorneys' rules of professional conduct in closing today, with the understanding that the facts that establish those rule violations also establish rule violations of the corresponding

2

federal immigration rules." On neither day did Assistant Bar Counsel address, nor make arguments specific to, the federal immigration professional rules.

After the hearing in this matter, as is its custom and practice, the Office of Bar Counsel submitted proposed findings of fact and conclusions of law to the hearing judge. Once again, Bar Counsel featured the MARPC as the professional rules to be applied by the hearing judge, but recited corresponding federal immigration professional rules, "in the event the Court of Appeals determined, pursuant to [Rule 8.5(b)] that the federal immigration [professional] rules" applied. Bar Counsel did not undertake any analysis as far as which rules were the operative rules for the hearing judge to apply, but instead sought to have the hearing judge make conclusions under *both* sets of rules for some of the immigration related matters (such as the competence, diligence, and communication violations).

Then, on other matters—and for reasons that are unclear to me—Bar Counsel's proposed conclusions of law *only* refer to violations of the Maryland Rule, with no reference to a corresponding federal immigration professional rule, even though there is very clearly a federal counterpart. For example, Bar Counsel's proposed conclusions assert that Mr. Taniform violated Maryland Rule 8.4(c) in connection with his representation of his clients in immigration proceedings with *no reference* to the corresponding federal immigration professional rule. As we observed in *Tatung*, 476 Md. at 86–87, the corresponding federal immigration professional rule appears to be different from Maryland Rule 8.4(c). *Compare* 8 C.F.R. § 1003.102(c) (stating that a professional violates the federal immigration professional rules where he or she "[k]nowingly or with reckless

3

disregard makes a false statement of material fact or law, or willfully misleads, misinforms, threatens, or deceives any person . . . concerning any material and relevant matter related to a case, including knowingly or with reckless disregard offering false evidence[]"), *with* Rule 8.4(c) (stating that it is "professional misconduct for an attorney to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[]"). As discussed below, Bar Counsel's proposed conclusions of law embrace a mix and match approach, which this Court expressly rejected in *Tatung* and *Bonner*.

*Hearing Judge's Findings of Fact and Conclusions of Law*

When faced with the alternative charges under two separate sets of professional rules, the hearing judge determined that "the conduct is covered by the Maryland Rules so imposing the Federal Rules would duplicate coverage rather than covering a different behavior or conduct." The hearing judge then concluded that, because "the findings of fact" for violations of the federal immigration professional rules "would be the same" as the findings necessary to establish a violation of the MARPC, she would proceed to make findings exclusively under the MARPC. For the reasons explained more fully below, the hearing judge's analysis was incorrect under Rule 8.5(b) and this Court's holding in *Tatung*.

*Rule 8.5(b)*

We recently described the genesis of Maryland's choice of law rule that applies to allegations of an attorney's professional misconduct—Maryland Rule 8.5(b)—in *Tatung*. 476 Md. at 74-75. It was added by a rules order of this Court in February 2005 in light of changes that were made in 2000 to the ABA Model Rules. *Id*.

4

Maryland Rule 8.5(b) states:

> In any exercise of the disciplinary authority of this State, *the rule of professional conduct to be applied shall* be as follows:
>
> (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and
>
> (2) for any other conduct, the rules of the jurisdiction in which the attorney's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. An attorney shall not be subject to discipline if the attorney's conduct conforms to the rules of a jurisdiction in which the attorney reasonably believes the predominant effect of the attorney's conduct will occur.

(Emphasis added).

Rule 8.5(b) "establishes the set of professional conduct rules that apply when an attorney practices in more than one jurisdiction—either by virtue of their physical presence or contacts with a particular jurisdiction, or their license to practice in more than one jurisdiction." *Tatung*, 476 Md. at 77. In either circumstance, comment 2 explains that "[a]n attorney may be potentially subject to more than one set of rules of professional conduct that impose different obligations." Maryland Rule 8.5, cmt. 2. The choice of law provisions established by Rule 8.5(b) recognize that "[t]he attorney may be licensed to practice in more than one jurisdiction with differing rules, or may be admitted to practice before a particular court with rules that differ from those of the jurisdiction or jurisdictions in which the attorney is licensed to practice." *Id.* "Additionally, the attorney's conduct may involve significant contacts with more than one jurisdiction." *Id.*

5

Comment 3 explains that subsection (b) "seeks to resolve such potential conflicts" in professional conduct rules between jurisdictions based upon the "premise . . . that minimizing conflicts between the rules, as well as uncertainty about which rules are applicable, is in the best interest of both clients and the profession (as well as the bodies having authority to regulate the profession)."  Maryland Rule 8.5, cmt. 3.  Accordingly, subsection (b)

> takes the approach of (i) providing that any particular conduct of an attorney *shall be subject to only one set of rules of professional conduct*, (ii) *making the determination of which set of rules applies to particular conduct as straightforward as possible*, consistent with recognition of appropriate regulatory interests of relevant jurisdictions, and (iii) providing protection from discipline for lawyers who act reasonably in the face of uncertainty.

*Id.* (emphasis added).

As we noted in *Tatung*, "Rule 8.5(b) divides multi-jurisdictional conduct into two categories—conduct that occurs in connection with a matter pending before a tribunal, and 'other' conduct."  476 Md. at 77 (quoting Rule 8.5(b)(2)).  We pointed out that "Rule 8.5(b)(1) states that when misconduct occurs in connection with a matter pending before a tribunal, the disciplinary authority 'shall' apply the professional conduct rules of the jurisdiction in which the tribunal sits, unless the tribunal's own rules specify otherwise."  *Id.* at 78 (quoting Rule 8.5(b)(1)).  We observed that "[t]he plain language of subsection (b)(1)—which mandates the application of the rules of the tribunal where the conduct occurred—is confirmed by comment 4 (explaining that, where the 'attorney's conduct relat[es] to a proceeding pending before a tribunal, *the attorney shall be subject only to the*

6

*rules of professional conduct of that tribunal*')[.]" *Id.* (alterations in original) (quoting Rule 8.5(b)(1), cmt. 4).

We then discussed Rule 8.5(b)(2), which "applies to 'other conduct'—in other words, conduct that does *not* occur in connection with a matter pending before a tribunal." *Id.* at 79 (emphasis in original). In such instances, we observed that "the disciplinary authority of this State 'shall' apply 'the rules of the jurisdiction in which the attorney's conduct occurred *or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct*.'" *Id.* (emphasis in original) (quoting Rule 8.5(b)(2)).

### *Application of Rule 8.5(b) in Tatung*

In *Tatung*, Bar Counsel charged the attorney with violating the MARPC for alleged misconduct in immigration proceedings. Mr. Tatung filed a motion to dismiss the charges, on the basis that Bar Counsel was required to charge him under Rule 8.5(b) with violating the federal immigration professional rules, instead of the MARPC. In connection with our consideration of the parties' exceptions and our determination of the sanction to impose, we considered Mr. Tatung's choice of law argument. Bar Counsel argued that it did not need to apply the federal immigration professional rules to the underlying conduct involving immigration proceedings because the federal immigration professional rules and the MARPC were consistent with one another. Stated another way, Bar Counsel asserted that, where the conduct involves another tribunal or jurisdiction, it is only required to apply the rules of the alternative jurisdiction when there is a conflict. 476 Md. at 73.

7

We expressly rejected Bar Counsel's interpretation of Rule 8.5(b) as being inconsistent with the plain language of the rule, as well as the comments. We stated that "[t]he rule does *not* give the disciplinary authority the discretion to apply the rules of another tribunal jurisdiction *only* in the event of a conflict." *Id.* at 87 (emphasis in original). We reiterated that "the Maryland Rules are 'precise rubrics' which are to be strictly followed." *Id.* at 87–88 (quoting *Gen. Motors Corp. v. Seay*, 388 Md. 341, 344 (2005); and then citing Maryland Rule 1-201(a) (explaining that, "[w]hen a rule, by the word 'shall' or otherwise, mandates [] conduct, . . . the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule []")).

In *Tatung*, we observed that Mr. Tatung's conduct all occurred "in connection with federal immigration proceedings in Texas." 476 Md. at 72. We further determined that, even where Mr. Tatung's conduct did not physically occur in Texas, the conduct nevertheless occurred "in connection with" the Texas immigration proceeding. *Id.* at 82. Accordingly, we determined that the federal immigration professional rules applied and governed the conduct. *Id.*

We further stated that "[o]ur interpretation of Rule 8.5(b) [] ensures that, where an attorney's misconduct triggers jurisdiction and oversight by more than one disciplinary authority, the attorney is treated fairly and uniformly by each jurisdiction, as contemplated by the comments" to Rule 8.5(b). *Id.* at 88. We pointed out, for example, that "Mr. Tatung's conduct could be the subject of *several* disciplinary proceedings—in Maryland (where he [was] not licensed but maintain[ed] a physical office), in the District of Columbia

8

(where he [was] licensed), in a [Board of Immigration Appeals ("BIA")] disciplinary proceeding (where the conduct arose), or even in Texas (the state in which the conduct occurred)." *Id.* (brackets added) (emphasis in original). And in fact, that is precisely what occurred in Mr. Tatung's situation. Upon learning that Mr. Tatung was not licensed in Maryland, his clients "withdrew their Maryland complaints and re-filed in the District of Columbia." *Id.* We noted that comment 6 instructs that it is "important for the disciplining jurisdictions to apply the same professional rules to the alleged misconduct to avoid any inconsistencies." *Id.* (citing Rule 8.5, cmt. 6).

Applying the choice of law provision to Mr. Tatung's conduct, we determined that the federal immigration professional rules promulgated under 8 C.F.R. § 1003.102 clearly applied to the proceedings before the federal immigration tribunal. *Id.* at 89. We held that, "[u]nder Rule 8.5(b)(1), *any charges filed by the Commission for misconduct arising in connection with the matter pending before the tribunal should have been filed under those rules*." *Id.* (emphasis added). We further determined that:

> even if the misconduct did not arise during a court proceeding (for example, negotiating a fee agreement for representation in the immigration proceedings), the misconduct occurred "in connection with" the federal immigration proceeding. Moreover, even if the conduct had not fallen within Rule 8.5(b)(1), the conduct would have been subject to the "predominant effect" test under Rule 8.5(b)(2). Maryland's connection to the specific conduct in this case is limited to Mr. Tatung having a physical office in Maryland (where he exclusively practices immigration law). The clients and their relatives were not Maryland residents, Mr. Tatung did not meet with them in the State, and the conduct occurred exclusively in a federal immigration court in Texas.

*Id.* We held that, although the Commission "ha[d] jurisdiction to investigate and ultimately sanction Mr. Tatung for any misconduct pursuant to Maryland Rule 8.5(a), under the

9

choice of law provisions set forth in Rule 8.5(b), the MARPC does not apply to the alleged conduct involving Mr. Tatung's representation of his clients in the federal immigration proceeding." *Id.* at 89-90. We held that "[u]nder Rule 8.5(b)(1), the *Commission was required to charge* Mr. Tatung under the federal immigration professional rules." *Id.* at 90 (emphasis added).

We provided some additional guidance to the Office of Bar Counsel and respondents. *First*, we observed that where the choice of law issue "is not properly raised, it will be deemed to be waived." *Id.* *Second*, we pointed out that, "with respect to the application of the federal regulations in immigration proceedings, the regulations specifically contemplate that the rules contained therein may be *supplemented* by a state's professional conduct rules." *Id.* (emphasis in original) (citing 8 C.F.R. § 1003.102 (explaining that the enumerated "categories do not constitute the exclusive grounds for which disciplinary sanctions may be imposed by the public interest[]")). "So, for example, if an immigration attorney who is licensed in Maryland commits violations of our professional conduct rules related to trust account violations, in addition to filing charges under the federal disciplinary rules contained in 8 C.F.R. § 1003.102, the attorney may also be charged with violating MARPC 1.15(a) because the federal regulations do not contain any counterpart to that rule." *Id.* at 90–91.

*Third*, we cautioned that our dismissal of the charges in the *Tatung* matter "should not be construed as precedent for the notion that we will dismiss attorney misconduct charges in any instance where the Commission files charges under one set of professional conduct rules and a subsequent determination is made by this Court that the choice of law

provisions in Rule 8.5(b) mandated the application of the professional rules of another

jurisdiction or tribunal." *Id.* at 91. As we explained,

> the substance of the professional conduct rules, in most instances, is the
> same. A competence violation under our MARPC will be, in almost every
> instance, a competence violation of the rules of another jurisdiction. Given
> that these professional rules have been enacted for the protection of the
> public, we do not and will not dismiss charges lightly. As part of our original
> jurisdiction over these matters, we have the authority to remand a case to the
> hearing judge for further proceedings where we determine it is appropriate.
> *See* Rule 19-741(c), Rule 1-201(a) (explaining that where a rule, by the word
> "shall" mandates certain conduct (such as the application of the choice of law
> provisions), we may "consider the consequences of noncompliance in light
> of the totality of the circumstances and the purpose of the rule").

*Id.* Under the particular facts of *Tatung*, we determined that dismissal of the charges was

appropriate because we concluded, "based upon our independent review of the record[,]

that, had we not dismissed the[] charges, we would have sustained most of Mr. Tatung's

exceptions, and we conclude[d] that the handful of careless mistakes that he made would

not have resulted in a sanction of more than a public reprimand." *Id.* at 91–92.

*Application of Rule 8.5(b) in Bonner*

We discussed the application of Rule 8.5(b) once again in *Bonner*, 477 Md. 576. In

that case, the Commission, acting through Bar Counsel, filed a petition for disciplinary or

remedial action against Keith Bonner, alleging violations of the MARPC. 477 Md. at 582-

83. Presumably in response to our decision in *Tatung*, Bar Counsel filed an amended

petition, charging Mr. Bonner with violations of corresponding rules under the District of

Columbia Rules of Professional Conduct (hereinafter the "D.C. Rules"). *Id.* at 583. In a

similar manner to the charges filed in the instant case, Bar Counsel filed charges under the

D.C. Rules in the alternative to the corresponding charges filed under the MARPC. *Id.*

11

Following a hearing, the judge issued written findings of fact and conclusions of law. *Id.* at 583–84. In his findings, the hearing judge correctly considered and applied the choice of law provisions in Maryland Rule 8.5(b) and determined that the D.C. Rules applied to Mr. Bonner's conduct because the "predominant effect of the conduct" occurred in the District of Columbia. The hearing judge concluded that Mr. Bonner violated D.C. Rule 8.4(a), (b), and (c), and correctly made conclusions of law under the D.C. Rules. *Id.* at 584.

Bar Counsel filed an exception to the hearing judge's failure to make legal conclusions under *both* the Maryland Rules *and* the D.C. Rules that were pleaded in the alternative. *Id.* at 597–98. We overruled Bar Counsel's exception. We restated the same principles pertaining to the correct application of Md. Rule 8.5(b) that we had expressed in *Tatung.* We reiterated that under the plain language of the rule, as well as the comments to the rule, only "*one set of professional rules* should apply to a particular act or acts of conduct." *Id.* at 598 (emphasis in original). We emphasized that "[t]he overarching principle behind Maryland Rule 8.5(b) is to ensure the *consistent application of one set of ethics rules* where the misconduct is potentially subject to two sets of rules." *Id.* at 599 (emphasis in original).

> We explained that
>
> it was appropriate for Bar Counsel to file charges under the D.C. Rules, and for the hearing judge to apply the same, given that the predominant effect of Mr. Bonner's misconduct occurred in the District of Columbia. However, given Bar Counsel's filing of charges under the D.C. Rules (albeit pleaded "in the alternative" to the Maryland Rules), and the hearing judge's correct application of those rules, it was unnecessary for the hearing judge to also render legal conclusions under the corresponding Maryland Rule based upon the same underlying misconduct. The comments to the Rules expressly contemplate that only *one set of ethics rules will apply to particular acts of*

12

*misconduct.* Where particular misconduct is identified and charged, the conduct should be subject to the application of only one set of professional rules. To hold otherwise would be to create situations where more than two sets of rules apply to the same discrete acts of misconduct, and with potentially inconsistent results, particularly where the professional rules are not identical.

*Id.* at 600.

To illustrate the potential unfairness or conflict with Bar Counsel's attempt to charge Mr. Bonner under two separate sets of professional rules for the same conduct, we observed that the charges filed "in the alternative" by Bar Counsel— in that case under D.C. Rule 8.4(d) and Maryland Rule 8.4(d)—contained different standards. *Id.* We observed that "Maryland Rule 8.4(d) appears to be a watered-down version of D.C. Rule 8.4(d)." *Id.* (*comparing* Maryland Rule 8.4(d) ("[i]t is professional misconduct for an attorney to: [] engage in conduct that is *prejudicial to the administration of justice*[]" (emphasis added)), *with* D.C. Rule 8.4(d) ("[i]t is professional misconduct for a lawyer to: [] engage in conduct that *seriously interferes with the administration of justice*[]" (emphasis added))). We observed that "Bar Counsel withdrew its charge under D.C. Rule 8.4(d) presumably because it is not identical to Maryland Rule 8.4(d) as far as the nature and degree of misconduct required to prove a violation." *Id.*

We specifically rejected Bar Counsel's argument that the hearing judge erred by failing to render legal conclusions concerning Maryland Rule 8.4(d) under Bar Counsel's alternative style pleading. We stated that, "[t]o permit Bar Counsel to charge, and a hearing judge to apply, in a mix and match fashion, *two sets* of professional rules to the *same acts of misconduct* is inconsistent with the plain language and purpose of Maryland Rule

13

8.5(b)—which is to apply *one set* of professional rules to particular misconduct." *Id.* at 600–01 (emphasis in original).

In support of its argument that the hearing judge erred in failing to make legal conclusions pertaining to the violations of the Maryland Rules, Bar Counsel directed us to Maryland Rule 19-727(e), which provides that the hearing judge is required to "prepare and file a written statement which shall contain [] findings of fact and conclusion of law as to each charge." *Id.* at 601 n.13. We stated that, "[a]lthough Bar Counsel correctly cites to the legal rule concerning the hearing judge's obligation, that rule must be read consistently with the choice of law provisions contained in Maryland Rule 8.5(b), which requires that one set of professional rules apply to the misconduct alleged." *Id.* We determined that "[i]t would be inconsistent with the plain language of the choice of law provisions contained in Maryland Rule 8.5(b) for the hearing judge to apply the D.C. Rules and the Maryland Rules to the same underlying misconduct." *Id*.

We explained, however, that "if a petition involves charges involving *separate acts of misconduct*, each separate act of misconduct may involve the application of a separate set of professional rules." *Id.* For example, we explained that "in *Tatung*, we applied the federal []immigration [professional] rules to the attorney's conduct arising from his representation of clients in federal immigration proceedings and applied the Maryland Rules to *separate allegations of misconduct* arising from the disciplinary proceeding itself." *Id.* (emphasis in original) (citing *Tatung*, 476 Md. at 92–93). We observed that "it was appropriate in *Tatung* to apply the Maryland Rules to the separate acts of alleged misconduct related to the Maryland disciplinary proceeding." *Id.* We expressly reiterated,

14

that "[i]n disciplinary matters arising under Maryland Rule 8.5(b), Bar Counsel should identify the discrete act or acts of misconduct and apply *one set of professional rules* to the particular act or acts of misconduct." *Id.* (emphasis in original).

*Returning the Application of 8.5(b) in this Case*

In this case, Bar Counsel's charges, presentation of its case, and proposed findings of fact and conclusions of law do not comport with our discussion and holdings in *Tatung* and *Bonner*. Although Bar Counsel's petition charged violations of the federal immigration rules in the alternative to the MARPC, it is clear—from the charges Bar Counsel set forth in the petition, its presentation of its case, and the proposed findings of fact and conclusions of law that it filed with the hearing judge—that Bar Counsel's primary focus was on application of the MARPC as the operative rules. In its pleadings and argument, Bar Counsel did not attempt to determine the correct application of the choice of law provisions as required by Rule 8.5(b). Bar Counsel appears to believe that it fulfills its obligation under Rule 8.5(b) if it files charges under the professional rules of another jurisdiction *as an alternative* to the MARPC, in the event *this Court* determines that the professional rules of another jurisdiction apply in connection with our ultimate review.

In my view, the discussion concerning which professional rules govern conduct involving another tribunal or jurisdiction does not *start at the end of the process* with this Court making an original determination under Rule 8.5(b) of the law that applies to the underlying conduct. Rather, such analysis must start at the *beginning of the process*—with the filing of the initial charges presented in the petition for disciplinary proceedings. In other words, prior to filing its initial petition, the Commission should undertake a Rule

15

8.5(b) analysis, and if the analysis reveals that another jurisdiction's professional rules apply to the underlying conduct, the Commission, through Bar Counsel, should file charges under those professional rules. In such instances, the other jurisdiction's professional rules should be the operative rules that should be charged and presented to the hearing judge for the hearing judge to apply. If Bar Counsel decides to file charges under the MARPC in the alternative, in the event that the hearing judge, or ultimately this Court, determines that the charges filed under the other jurisdiction's professional rules are improper, Bar Counsel may do so. However, under Rule 8.5(b), the professional rules of the applicable jurisdiction or tribunal should be the operative set of rules charged, and they should *not* be pleaded as an alternative to the MARPC.

Bar Counsel's approach—which requests that the hearing judge apply two sets of professional rules to particular conduct without undertaking an analysis under Rule 8.5(b), *and* which utilizes a "mix and match" application of two sets of professional rules to underlying conduct that is clearly governed by the professional rules of another jurisdiction or tribunal—is inconsistent with its obligations to correctly charge and apply the choice of law provisions under Rule 8.5(b) and our recent holdings in *Tatung* and *Bonner*. In my view, Bar Counsel's approach to Rule 8.5(b) also creates confusion before the hearing judge (and for the attorney who is the subject of the petition) as to which rules it is seeking to apply.

In proceedings that involve the application of Rule 8.5(b), the hearing judge should be guided by our discussion of the rule in *Tatung* and *Bonner.* The hearing judge should consider and apply Rule 8.5(b), and the hearing judge's analysis and conclusions under the

16

rule should be reflecting in his or her findings of fact and conclusions of law. *See Bonner*, 477 Md. at 584. If the hearing judge determines that Rule 8.5(b) requires the application of the professional rules of another jurisdiction or tribunal, the hearing judge should make conclusions of law under those professional rules. *Id.* Where Bar Counsel alleges violations of the MARPC in the alternative to the operative professional rules of the other jurisdiction, the hearing judge may make conclusions of law under the alternatively-pleaded rules, but is not required to do so. *Id.* at 600–01 and n.13.

In this case, it is clear that the federal immigration professional rules applied to the particular conduct involving the two immigration cases. The hearing judge incorrectly determined that she could apply the Maryland Rules because they "overlapped." That is not the correct application of the choice of law provisions.